1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

PETER C THURMAN,                           CASE NO. C12-6093 RJB

            Plaintiff,                     ORDER ON DEFENDANT'S
12                                          MOTION TO DISMISS AND/OR
                                            MOTION FOR SUMMARY
13          v.                              JUDGMENT

14   RAY MABUS,

            Defendant.
15

16          This matter comes before the court on Defendant's Motion to Dismiss and/or Motion for

17   Summary Judgment.  Dkt. 28.  The court has considered the relevant documents and the

18   remainder of the file herein.

19                  RELEVANT FACTS AND PROCEDURAL HISTORY

20          On April 30, 2012, plaintiff, then a civilian employee of the United States Navy, was

21   arrested by Naval police and charged with simple assault and possession of a loaded weapon

22   without a permit, arising from an altercation that occurred at the Missouri Gate of Naval Base

23   Kitsap earlier that day.  Dkt. 29-1, at 2-3.

24

On May 8, 2012, the Commanding Officer of Naval Facilities Engineering Command Northwest issued a Proposed Suspension of Access to Classified Information and Areas, proposing that plaintiff's access to classified information be suspended due to the pending criminal charges.  Dkt. 29-1, at 12.

On May 14, 2012, the Commanding Officer of the Naval Facilities Engineering Command Northwest issued a Final Decision on the proposed suspension, suspending plaintiff's access to classified information. Dkt. 29-1, at 14.  The Final Decision informed plaintiff that the final security eligibility determination would be made by the Department of the Navy Central Adjudication Facility.  Dkt. 29-1, at 14.

On June 20, 2012, LCDR Anthony Haverly issued a Decision on Proposed Indefinite Suspension (suspension letter), in which plaintiff was notified that due to his inability to access classified information, the Navy was placing him on an indefinite suspension effective June 20, 2012.  Dkt. 29-1, at 16-19. The June 20, 2012 suspension letter further notified plaintiff of his right to challenge the suspension by filing an appeal with the Merit Systems Protection Board (MSPB) within thirty (30) calendar days or by using the negotiated grievance process contained in the collective bargaining agreement with his union; that, if he chose to appeal to the MSPB, the appeal must be filed within thirty days; and that, if he did not submit his appeal within the time set by statute or regulation, it would be dismissed as untimely unless good reason for the delay was shown.  Dkt. 29-1, at 18.  The suspension letter also informed plaintiff, as follows:

> 8.  If you believe this action discriminated against you on the basis of race, color, religion, sex, national origin, age, handicap or reprisal for participation in equal employment opportunity (EEO) protected activity, you may file a complaint of discrimination with the Navy Region Northwest, EEO Office, within 45 calendar days of the effective date of this action….

> 9.  If you decide to file, you must make an election on what forum to use.  You may not file both a MSPB appeal and an EEO complaint.  You must make an election to file in

one or the other.  Should you elect to file a complaint of discrimination, your complaint will be processed in accordance with EEOC regulations in 29 CFR Part 1614.  Should you elect to file an appeal with MSPB, your appeal will be processed in accordance with MSPB regulations in 5 CFR part 1201, Subpart B.

Dkt. 29-1, at 19.

Plaintiff received the June 20, 2012 suspension letter on June 23, 2012. Dkt. 29-1, at 20.

On August 17, 2012, approximately fifty-five (55) days after receiving the June 20, 2012 suspension letter, plaintiff electronically filed an appeal with the MSPB challenging his suspension. Dkt. 29-1, at 24-29.  In explaining why he thought that the agency was wrong in taking his action or making this decision, plaintiff stated as follows:

I am not, and have never been a law-breaker.  I always obey law-enforcement.  I never received an unsatisfactory performance appraisal in my 27-years civilian service, I have two (2) Honorable Discharges for military service (USMC Reserves (1979-1985 and 1998-2000) and never received office- hours, and I received a letter of commendation for service as a reserve police officer during the WWII 50-year commemary [sic] in Bremerton, WA.  Prior to my April 30th arrest, I was in-training to do my job as Design Engineer by my supervisor, Earl McCarthy.  Further, The Navy intends to dismiss their charge of Simple Assault which prompted my arrest by law enforcement, my loss of clearance and my suspension.

Dkt. 29-1, at 28.  The appeal form provided a place for plaintiff to file "all additional claims you would like to file with this appeal."  Dkt. 29-1, at 27.  One of the choices was "File a claim of prohibited discrimination;" plaintiff did not mark that claim, but instead marked "No additional Claims."  Dkt. 29-1, at 27.  Also, on the appeal form, plaintiff stated that the date he received the agency's final decision letter was May 14, 2012.  Dkt. 29-1, at 26.  That was apparently the date plaintiff received the decision suspending his access to classified information, not the date he received the letter placing him on indefinite suspension (June 23, 2012).  Nonetheless, the MSPB considered the latter date--June 23, 2012—as the date the final decision on which the time limit began to run (Dkt. 29-1, at 36); this latter date was in plaintiff's favor.

ORDER ON DEFENDANT'S MOTION TO
DISMISS AND/OR MOTION FOR SUMMARY
JUDGMENT- 3

1  On August 20, 2012, plaintiff and the United States entered into a Plea Agreement

2  whereby plaintiff agreed to plead guilty to the offense of leaving a loaded weapon in an unlocked

3  vehicle, in violation of 18 U.S.C. Sections 7 and 13 and RCW 9.41.050(2).  Dkt. 29-1, at 5-7.

4  Pursuant to the Plea Agreement, a Judgment was issued against plaintiff on August 20, 2012.

5  Dkt. 29-1, at 10.

6  On September 18, 2012, after giving plaintiff an opportunity to provide "good cause" for

7  the late filing, the MSPB administrative judge dismissed the appeal as untimely.   Dkt. 29-1, at

8  31-42. Plaintiff filed a Petition for Review with the full MSPB on September 20, 2012.  Dkt. 29-

9  1, at 44-50.

10  On September 21, 2012, plaintiff contacted an EEO counselor with the Navy's EEO

11  office, and an initial interview was conducted on September 26, 2012. Dkt. 29-2, at 2-7.

12  On October 5, 2012, the Navy reinstated Plaintiff's access to classified information. Dkt.

13  29-1, at 2.

14  On November 16, 2012, plaintiff filed a formal EEO complaint with the Navy alleging

15  that (1) his June 2012 suspension was in reprisal for an earlier and unrelated informal EEO

16  complaint; and (2) his April 2012 arrest was due to his color, race, sex, and age. Dkt. 29-2, at 9-

17  10.  On December 17, 2012, the Navy dismissed the November 2012 EEO complaint on the

18  grounds that (1) plaintiff had already chosen the MSPB as his forum to appeal the agency's

19  actions; and (2) the EEO complaint was untimely. Dkt. 29-2, at 29-34.

20  On December 31, 2012, plaintiff filed this case against Ray Mabus, Secretary of the

21  Navy, alleging employment discrimination on the basis of "race, occupation, age, personality."

22  Dkt. 1-1, at 2.  In support of his claims, plaintiff alleged as follows:

23  Navy command and unknown civil service workers do not want me employed as
    mechanical engineer.  They defame me by telling/spreading falsehoods about me.  Along

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS AND/OR MOTION FOR SUMMARY
JUDGMENT- 4

with Navy police, they do not acknowledge or take action on my behalf over assaults or property damages I experience on govt property.  Navy command has opposed my training and function as a mechanical engineer, and they acknowledge no wrongdoing by themselves.

Dkt. 1-1, at 2.  Plaintiff alleges that the discrimination occurred on or about April 30, 2012.  Dkt. 1-1, at 2.  The complaint requests back pay from June 22, 2012 to October 11, 2012; removal of an August 20, 2012 criminal conviction from his record; and five times $3.8 million or the amount deemed fair and reasonable by the court.  Dkt. 1-1, at 3.

As of the date defendant's motion was filed (May 28, 2013), no final decision on the Petition for Review had been rendered by the Board in the MSPB appeal. Dkt. 29, at 2.

<u>MOTION TO DISMISS AND/OR SUMMARY JUDGMENT</u>

On May 28, 2013, defendant filed a motion to dismiss and/or motion for summary judgment.  Dkt. 28.  Defendants request that the court dismiss this case because plaintiff failed to exhaust his administrative remedies with regard to employment discrimination claims and to any arguable tort claims for defamation, assault, and property damage.

On May 29, 2013, the court issued a notice, informing plaintiff of the requirements to respond to the motion.  Dkt. 30.  On June 17, 2013, plaintiff filed a response to the motion.  Dkt. 31 and 32.  Plaintiff contends that he has an exemplary work history; and that he was unfairly arrested and charged with assault and unlawful possession of a concealed weapon.  Dkt. 31, at 1-2.  Plaintiff stated that his criminal trial was continued to August 20, 2012, and that the deadlines for the MSPB appeal and EEO process passed "before plaintiff's mental state was up to task of legal work." Dkt. 31, at 2.  Regarding any tort claims he may assert in his complaint, plaintiff stated that he is "ignorant of my requirement to use SF 95 and FTCA.  I am only knowledgable [sic] of EEO, MSPB and federal court."  Dkt. 32, at 1.  Plaintiff requests that the court dismiss the case without prejudice.  Dkt. 31, at 3.

1    On June 21, 2013, defendant filed a reply, contending that plaintiff failed to present any

2    evidence that he had exhausted administrative remedies; and that plaintiff's alleged ignorance of

3    the requirements to pursue an FTCA claim, and alleged mental state that prevented him from

4    being up to the task of legal work, are insufficient to counter defendant's legal arguments.  Dkt.

5    33.

6                                   LEGAL STANDARDS

7    **1.  Subject Matter Jurisdiction**

8        A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual

9    allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the

10   Constitution, laws, or treaties of the United States, or does not fall within one of the other

11   enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or

12   controversy within the meaning of the Constitution; or (3) is not one described by any

13   jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v.*

14   *Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal

15   question jurisdiction) and 1346 (United States as a defendant).  When considering a motion to

16   dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may

17   review any evidence to resolve factual disputes concerning the existence of jurisdiction.

18   *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052

19   (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court

20   is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise.  *Kokkonen v.*

21   *Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated*

22   *Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the

23

24

1    existence of subject matter jurisdiction.  *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co.,*

2    *Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9ᵗʰ Cir. 1979).

3            When a motion is made pursuant to Fed.R.Civ.P. 21(b)(1), plaintiff has the burden of

4    proving that the court has subject matter jurisdiction.  *Tosco Corp. v. Communities for a Better*

5    *Environment*, 236 F.3d 495, 499(9th Cir. (1001).  Plaintiff must demonstrate the existence of

6    whatever is essential to federal jurisdiction, and, if plaintiff does not do so, the court, on having

7    the defect called to its attention or on discovering the defect, must dismiss the case, unless the

8    defect can be cured by amendment.  *Smith v. McCullough*, 270 U.S. 456, 459 (1926).  When

9    considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face

10   of the pleadings, but may review any evidence to resolve factual disputes concerning the

11   existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9ᵗʰ Cir. 1988), *cert.*

12   *denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9ᵗʰ Cir.

13   1983).

14           **2.  Motion to Dismiss**

15           Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

16   legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri*

17   *v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken

18   as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d

19   1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

20   not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

21   entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

22   elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955,

23   1964-65 (2007)(*internal citations omitted*).  "Factual allegations must be enough to raise a right

24

to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  If the claim is not based on a proper legal theory, the claim should be dismissed. *Id*.  "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 2009 WL 2052985 (9th Cir. July 16, 2009).

**3.  Motion for Summary Judgment**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

1  *Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

2  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

3        The determination of the existence of a material fact is often a close question.  The court

4  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

5  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

6  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

7  of the nonmoving party only when the facts specifically attested by that party contradict facts

8  specifically attested by the moving party.  The nonmoving party may not merely state that it will

9  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

10  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

11  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

12  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

13                                    DISCUSSION

14    **1.  Claims of Discrimination**

15        *Title VII Discrimination.*  Plaintiff claims that he was discriminated against on the basis

16  of "race, occupation, age, personality." Defendant contends that the court lacks subject matter

17  jurisdiction over plaintiff's claims of discrimination because plaintiff failed to exhaust his

18  administrative remedies.

19        Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race,

20  color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2, 2000e-3.  Title VII is the exclusive,

21  preemptive remedy for federal employment discrimination.  *Brown v. General Services*

22  *Administration*, 425 U.S. 820, 829 (1976).  To establish federal subject matter jurisdiction, a

23  plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a

24  Title VII claim. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002).

Federal employees, depending on the circumstances, have two possible routes in which to exhaust their administrative remedies and challenge employment decisions. A federal employee can challenge an employment decision via the Equal Employment Opportunity (EEO) process, that is, through the agency; or through an appeal to the MSPB.

*EEO/Agency Process*.  Complaints of employment discrimination are generally handled via the EEO process, which is governed by regulations promulgated by the Equal Employment Opportunity Commission (EEOC). *See* 29 C.F.R. Part 1614. The EEOC promulgated regulations to establish procedures for the administrative implementation of its provisions.  *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. §1614. If an aggrieved person chooses to proceed through the agency/EEO process, that person must exhaust his or her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge.  42 U.S.C. § 2000e-5(b); *see also B.K.B.*, 276 F.3d at 1099. To initiate this process, an employee must, within 45 days of each discrete act of alleged discrimination, contact an EEO counselor. 29 C.F.R. § 1614.105. Thereafter, the regulations contain specific time limits for completing each step of the EEO process. *See* 29 C.F.R. §§ 1614.106(b), 407(a).

In order to exhaust his administrative remedies through the EEO/agency process, plaintiff was required to contact an EEO counselor within 45 days of any allegedly discriminatory act.  29 C.F.R. Section 1614.105(a)(2); *Johnson v. United States Treasury Department*, 27 F.3d 415, 416 (9th Cir. 1994).

*MSPB Appeal*.  If an employee is not alleging discrimination but is still challenging an employment decision, the Civil Service Reform Act (CSRA) provides that federal employees can, under certain circumstances, appeal directly to the Merit Systems Protection Board (MSPB).

1   5 U.S.C. § 7512. The MSPB can only hear complaints that involve agency actions that have

2   expressly been made appealable to it by some rule, law or regulation, such as removals,

3   suspensions of over 14 days, and reductions-in-grade. *See* 5 U.S.C. § 1204(a)(1); 5 U.S.C. §

4   7512 (1)-(5).  If an MSPB administrative law judge (ALJ) rules against an employee, the

5   employee can, within 30 days of receiving an adverse decision, file a petition to the full MSPB in

6   Washington, D.C. for review of the decision.  Judicial review of an adverse MSPB decision lies

7   exclusively with the Federal Circuit.  Judicial review must be sought within 60 days of the final

8   decision of the MSPB ALJ or the Board. 5 U.S.C. § 7703(b)(1).

9          *Mixed Case*.  Although allegations of discrimination normally go through the EEO

10   process and the MSPB ordinarily does not have jurisdiction to hear claims of discrimination, the

11   MSPB can have pendent jurisdiction over discrimination claims when they are brought in

12   conjunction with adverse actions that are expressly appealable to the MSPB. *See* 5 C.F.R. §

13   1201.151; 5 U.S.C. §§ 7512 or 1221; 5 U.S.C. § 7702 (a)(1)(B); 29 C.F.R. §1614.302(a)(1).

14   Such a claim is referred to as a "mixed case." 29 C.F.R. §§ 1614.302 (a)(1) and (2).

15          A federal employee who raises a "mixed case" can seek redress by either (1) filing an

16   EEO complaint, referred to as a "mixed case complaint," with the agency's EEO office, or by (2)

17   filing what is called a "mixed case appeal" with the MSPB. *See* 5 U.S.C. § 7702(a)(1)(B); 5

18   C.F.R. § 1201.154(a); 29 C.F.R. §§ 1614.302(a) & (b). A federal employee, however, cannot

19   pursue mixed case claims before both the agency and the MSPB. If an employee files a claim

20   with both the MSPB and the agency's EEO office, whichever matter is filed first (the MSPB

21   appeal or the EEO complaint) shall be considered an election to proceed in that forum. *See* 29

22   C.F.R. § 1614.302(b).

23

24

1    If an employee chooses to file a mixed case appeal with the MSPB, he or she must do so

2    "no later than 30 days after the effective date, if any, of the action being appealed, or 30 days

3    after the date of the appellant's receipt of the agency's decision, whichever is later." 5 C.F.R. §

4    1201.154(b).  The relevant regulations mandate that such an appeal "must state that there was

5    discrimination in connection with the matter appealed, and it must state specifically how the

6    agency discriminated against the appellant. . . ." 5 C.F.R. § 1201.153(a)(1). Although the

7    regulations generally pertaining to MSPB appeals provide that an "appellant may raise a claim or

8    defense not included in the appeal" after the initial filing of the appeal, he or she may only do so

9    "before the end of the conference(s) held to define the issues in the case. An appellant may not

10   raise a new claim or defense after that time, except for good cause shown." 5 C.F.R. §

11   1201.24(b).

12       *Judicial Review*.  As noted above, judicial review of pure MSPB cases lies exclusively

13   with the Federal Circuit.  5 U.S.C. § 7703; 5 C.F.R. § 1201.120.  However, mixed case appeals

14   are reviewed by the district court, whether they were accepted and adjudicated by the MSPB on

15   the merits of the discrimination claim or on procedural grounds. 5 C.F.R. § 1201.175; *Kloeckner

16   v. Solis*, 133 S.Ct. 596, 607 (2012).  In such a case, the district court reviews the discrimination

17   allegation *de novo* and the adverse action is reviewed on the record under an arbitrary and

18   capricious standard.

19       *Exhaustion of Administrative Remedies*.  In this case, plaintiff claims that he was

20   subjected to employment-based discrimination on or about April 30, 2012, the date of his arrest.

21   Plaintiff appears to actually challenge the June 20, 2012 suspension that stemmed from the arrest

22   and conviction.

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS AND/OR MOTION FOR SUMMARY
JUDGMENT- 12

1    Plaintiff's MSPB appeal challenged the decision to indefinitely suspend him. The record

2    shows that plaintiff did not include allegations of discrimination in his MSPB appeal.  The initial

3    decision of the MSPB ALJ indicated that plaintiff did not include allegations of discrimination in

4    the appeal. Dkt. 29-1, at 35.  The ALJ stated that, as a result, he did not address mixed case

5    complaint procedures. Dkt. 29-1, at 35.  A final decision has apparently not yet been made by

6    the MSPB.  Because plaintiff did not include allegations of discrimination in his MSPB appeal,

7    judicial review of the MSPB decision, including whether plaintiff's appeal was untimely, would

8    be within the jurisdiction of the Federal Circuit, not this court.

9    In sum, the record shows that plaintiff filed an appeal of the suspension letter with the

10   MSPB before he initiated the agency/EEO process.  Plaintiff failed to include a claim of

11   discrimination as a pendant claim in the MSPB proceeding.  Plaintiff elected to pursue an MSPB

12   appeal instead of the agency/EEO process.  By statute and regulation, he is precluded from

13   pursuing his discrimination a claim in this district court proceeding.  His discrimination claims

14   should be dismissed on this basis alone.

15   Even assuming, however, that plaintiff could properly bring a Title VII claim in this court

16   (following the EEO/agency process), plaintiff would have been required to exhaust his

17   administrative remedies by first contacting an EEO counselor within forty-five days of the

18   suspension letter, which was issued on June 20, 2012 and received by plaintiff on June 23, 2012.

19   In this case, at the very latest, plaintiff would have been required to contact an EEO counselor by

20   August 7, 2012.  Plaintiff contacted an EEO counselor with the Navy's EEO office September

21   21, 2012.  Plaintiff did not timely initiate the EEO process.

22   Failure to make timely contact with an EEO counselor bars a claim, absent waiver,

23   estoppel or equitable tolling.  *Boyd v. United States Postal Service*, 752 F.2d 410, 414 (9th Cir.

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS AND/OR MOTION FOR SUMMARY
JUDGMENT- 13

1  1985).  See 29 C.F.R. § 1614.107(a)(1) and (2);  *Leorna v. United States Department of State*,

2  105 F.3d 548, 550-51 (9th Cir. 1997) ("Pursuant to these procedures, a claimant must consult the

3  allegedly discriminating agency's EEO counselor prior to filing a complaint in order to try to

4  informally resolve the matter . . . if the matter cannot be resolved informally, a complaint must

5  be filed with the agency within fifteen days of the conclusion of the pre-complaint processing.

6  The agency will dismiss a complaint that fails to comply with the applicable time limits or that

7  raises a matter that has not been brought to the attention of a counselor.");  *Johnson v. United*

8  *States Treasury Dept.*, 27 F.3d 415, 416 (9th Cir. 1994) (failure to bring grievance within the

9  designated time period was fatal to the plaintiff's discrimination claim); *Miles v. Dep't of the*

10  *Army*, 881 F.2d 777, 780 (9th Cir. 1989) (affirming dismissal where the plaintiff neglected to

11  seek EEO counseling within the allotted time period); *Boyd v. United States Postal Service*, 752

12  F.2d 410, 414-15 (9th Cir. 1985) (dismissing the plaintiff's discrimination claim where he failed

13  to give notice to EEO counselor within requisite time after the allegedly discriminatory acts).

14      Plaintiff failed to timely exhaust his administrative remedies through the agency/EEO

15  process.  His claim that the agency/EEO deadline passed before his mental state was up to the

16  task of legal work is insufficient to excuse his failure to exhaust.

17      Because plaintiff failed to comply with the time limits for exhausting his discrimination

18  claims, any attempt to do so now would be futile.  The claims of discrimination he raises in this

19  complaint should be dismissed with prejudice.

20      **2. Tort Claims**

21      It is unclear whether plaintiff alleges common law tort claims.  In an effort to construe

22  the complaint liberally in plaintiff's favor, the court assumes that plaintiff alleges claims of

23  defamation, assault, and/or property damage.  Defendant contends that plaintiff failed to exhaust

24

1    his administrative remedies with respect to common law tort claims.  Plaintiff claims that he is

2    uneducated about FTCA requirements.

3        The United States, as sovereign, is immune from suit unless it consents to be sued. *United*

4    *States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349 (1980); *Cato v. United States*, 70 F.3d

5    1103, 1107 (9th Cir. 1995).  If a claim does not fall squarely within the strict terms of a waiver of

6    sovereign immunity, a district court is without subject matter jurisdiction. *See, e.g.*, *Mundy v.*

7    *United States*, 983 F.2d 950, 952 (9th Cir. 1993).

8        The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80, is a limited waiver

9    of sovereign immunity, rendering the United States liable for certain torts of federal employees.

10   Under the FTCA, and subject to certain exceptions, the United States can be held liable "for

11   injury or loss of property, or personal injury or death caused by the negligent or wrongful act or

12   omission of any employee of the Government while acting within the scope of his office or

13   employment, under circumstances where the United States, if a private person, would be liable to

14   the claimant in accordance with the law of the place where the act or omission occurred." 28

15   U.S.C. § 1346(b). The FTCA is the exclusive remedy for state law torts committed by federal

16   employees within the scope of their employment. 28 U.S.C. § 2679(b)(1).

17        As a jurisdictional prerequisite, an FTCA action can only be instituted once an

18   administrative claim is denied, either actually or constructively by the agency's failure to act

19   upon the claim within six months. 28 U.S.C. § 2675(a). Thus, an FTCA action may not be

20   maintained when the claimant fails to exhaust administrative remedies prior to filing suit. *McNeil*

21   *v. United States*, 508 U.S. 206 (1993); *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992);

22   *Caton v. United States*, 495 F.2d 635, 638 (9th Cir. 1974) (statutory procedure is clear that a tort

23   proceeding may not be commenced in court against the United States until the claim is

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS AND/OR MOTION FOR SUMMARY
JUDGMENT- 15

1   conclusively denied or a lapse of six months without action); *Burns v. United States*, 764 F.2d

2   722, 724 (9th Cir. 1985) (claim requirement is jurisdictional in nature and may not be waived).

3          Specifically, in order to properly file an administrative claim with a federal agency, 28

4   C.F.R. § 14.2 requires as follows:

5          [A] claim shall be deemed to have been presented when a Federal agency receives from a
       claimant, his duly authorized agent or legal representative, an executed Standard Form 95
6      or other written notification of an incident, accompanied by a claim for money damages
       in a sum certain for injury to or loss of property, personal injury, or death alleged to have
7      occurred by reason of the incident; and the title or legal capacity of the person signing,
       and is accompanied by evidence of his authority to present a claim on behalf of the
8      claimant . . .

9   28 C.F.R. § 14.2. The regulation requires that in order to present an administrative tort claim to

10  the appropriate agency the claimant must present the claim to the agency in writing by means of

11  an SF-95 or equivalent and the writing must include a demand for a sum certain amount of

12  monetary damages. *See GAF Corp. v. United States*, 818 F.2d 901, 919 (D.C. Cir. 1987) (holding

13  that Section 2675(a) requires a claimant to file "(1) a written statement sufficiently describing the

14  injury to enable the agency to begin its own investigation and (2) a sum-certain damages

15  claim."). Both the FTCA itself and its implementing regulations make clear that prior to filing

16  suit in court a claimant must file an administrative claim with the relevant agency.

17         Assuming that plaintiff intends to pursue the common law tort claims of defamation,

18  assault, and property damage, plaintiff failed to file an SF-95 or the equivalent prior to filing suit.

19  *See* Dkt. 29-2, at 37.  The United States has not waived sovereign immunity and this Court lacks

20  jurisdiction over any common law FTCA claims. Those claims should be dismissed.

21      **3. Criminal Conviction**

22         In his response to defendant's motion, plaintiff contends that he has had an admirable

23  work record.  He also challenges the facts underlying his conviction.  It is unclear what the legal

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS AND/OR MOTION FOR SUMMARY
JUDGMENT- 16

1   basis for challenging his conviction is.   Further, plaintiff pled guilty to the offense of leaving a

2   loaded weapon in an unlocked vehicle.  He has not shown that his conviction or sentence has

3   been invalidated.  The court should dismiss without prejudice any claims regarding the legality

4   of plaintiff's conviction.

5       Accordingly, it is hereby **ORDERED** that Defendant's Motion to Dismiss and/or

6   Motion for Summary Judgment (Dkt. 28) is **GRANTED**. Plaintiff's claims of discrimination

7   under Title VII are **DISMISSED WITH PREJUDICE**.  Any common law tort claims asserted

8   in the complaint are **DISMISSED WITHOUT PREJUDICE**.  Any claims regarding the

9   legality of plaintiff's conviction are **DISMISSED WITHOUT PREJUDICE**.  This case is

10  **DISMISSED**.

11      The Clerk is directed to send uncertified copies of this Order to all counsel of record and

12  to any party appearing *pro se* at said party's last known address.

13      Dated this 24th day of June, 2013.

15  *Robert J Bryan*

16  ROBERT J. BRYAN
    United States District Judge